UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

ERIC J. WISCHMEYER,

                              Plaintiff,

          vs.

ARTHUR J. WISCHMEYER, RICHARD M.
WISCHMEYER, JOHN A. WISCHMEYER,
ANNE C. WISCHMEYER, JANET M.
WISCHMEYER, THOMAS C. WISCHMEYER,
PHILLIP B. DATILLO, LINDA DATTILO,
LORI E. NEUMANN, DANIEL NEUMANN,
and K. BARTHELMES MANUFACTURING
COMPANY, INC.

                              Defendants,

_____

**COMPLAINT**

**Civ. No.**

          Plaintiff, Eric J. Wischmeyer , by his attorney, Robert D. O'Connell, Esq.,

for his complaint against the above captioned defendants, alleges as follows:

### PARTIES

          1.     At all times herein alleged, plaintiff Eric J. Wischmeyer is and was a

resident of the Town of Spencerport, County of Monroe, State of New York and

resides at 76 Sarah Circle, Spencerport, New York 14559.

          2.     At all times herein alleged, defendant Arthur J. Wischmeyer is and

was a resident of the County of Monroe, State of New York.

          3.     At all times herein alleged, defendant Richard M. Wischmeyer is

and was a resident of the County of Monroe, State of New York.

4.      Plaintiff is informed and believes, and on the basis of that information and belief alleges, that  at all times herein alleged, defendant John A. Wischmeyer is and was a resident of London, England.

5.      At all times herein alleged, defendant Anne C. Wischmeyer is and was a resident of the County of Monroe, State of New York.

6.      At all times herein alleged, defendant Janet M. Wischmeyer is and was a resident of the County of Livingston, State of New York.

7.      At all times herein alleged, defendant Thomas C. Wischmeyer is and was a resident of the County of San Diego, State of California.

8.      At all times herein alleged, defendant Phillip B. Dattilo is and was a resident of the County of Monroe, State of New York.

9.      At all times herein alleged, defendant Linda Dattilo is and was a resident of the County of Monroe, State of New York.

10.      At all times herein alleged, defendant Lori A. Neumann is and was a resident of the County of Monroe, State of New York.

11.      At all times herein alleged, defendant Daniel Neumann is and was a resident of the County of Monroe, State of New York.

12.      At all times herein alleged, the defendant K. BARTHELMES Manufacturing Company, Inc.,  hereinafter referred to as "defendant BARTHELMES" is and was a New York State Sub-chapter "S" corporation, duly organized and existing under the laws of the State of New York, with its principal place of business located within the County of Monroe, State of New York, at 15 Cairn Street, Rochester, NY 14611.

13.     At all times material to this action, the Board of Directors of defendant BARTHELMES consisted of defendant Arthur J. Wischmeyer, defendant Richard M. Wischmeyer, defendant Anne C. Wischmeyer, defendant Janet M. Wischmeyer, defendant Linda Dattilo, defendant John A. Wischmeyer, defendant Thomas C. Wischmeyer, and defendant Lori E. Neumann.

14.     Plaintiff is informed and believes, and on the basis of that information and belief alleges, that at all times material to this action, the officers of defendant BARTHELMES consisted of defendant Arthur J. Wischmeyer, Chief Executive Officer; defendant Richard M. Wischmeyer, President; defendant Anne C. Wischmeyer, Secretary; defendant Linda Dattilo, Treasurer; defendant Phillip Dattilo, Vice-President; and defendant John A. Wischmeyer, Vice-President.

15.     Plaintiff is informed and believes, and on the basis of that information and belief alleges, that at all times material to this action, defendant Arthur J. Wischmeyer, defendant Richard M. Wischmeyer, defendant Anne C. Wischmeyer, defendant Linda Dattilo, defendant John A. Wischmeyer, defendant Lori E. Neumann, defendant Thomas C. Wischmeyer, defendant Phillip Datillo, defendant Janet M. Wischmeyer, and defendant Daniel Neumann were controlling shareholders of defendant BARTHELMES.

16.     Plaintiff is informed and believes, and on the basis of that information and belief alleges, that at all times material to this action, defendants were the agents and employees of their codefendants, and in doing the things alleged in this complaint were acting within the course and scope of that agency and employment.

## JURISDICTION

17.     This action arises under the Securities and Exchange Act of 1934, Chapter 4, Stat. 881, 15 U.S.C. § 78j and Rule 10b-5 promulgated pursuant to the Act ( 17 C.F.R. § 240.10b-5 ) as more fully appears below.

18.     That the jurisdiction of this Court is invoked pursuant to the provisions of the Securities and Exchange Act of 1934, Section 27, 48 Stat. 902 (15 U.S.C. § 78aa ).

## FACTUAL BACKGROUND

19.     Defendant BARTHELMES is a manufacturing business which was formed in 1921 by plaintiff's grandfather,  and at all times relevant herein defendant BARTHELMES is and was majority-owned and managed by members of plaintiff's family.

20.     Since its formation, defendant BARTHELMES has been engaged in the design, manufacture and sale of fabricated metal products used in manufacturing and heavy industry.

21.     As of March 1997, plaintiff was the owner of 711.667 shares of capital stock of defendant BARTHELMES, hereinafter referred to as "plaintiff's Stock".

22.     As of 1997, plaintiff was also an owner of the real property located at 15 Cairn Street, Rochester, NY 14611 (hereinafter referred to as "the Property"), upon which the manufacturing facility of the defendant BARTHELMES was and is located.

23.     From 1977 to 1996, plaintiff was employed by defendant BARTHELMES in sales, engineering and management.  As of 1996, plaintiff was the general manager of defendant BARTHELMES.

24.     In 1996, defendants removed plaintiff as general manager of defendant BARTHELMES, and thereafter defendants totally excluded plaintiff from the operation, management, and rights of ownership of defendant BARTHELMES, and defendants refused and denied plaintiff access to any financial information regarding the business of defendant BARTHELMES.

25.     On or about August 18, 2003 (hereinafter referred to as the Stock Sale Date"), defendants offered to purchase, and plaintiff agreed to sell, all of his Stock in defendant BARTHELMES.

26.     On the Stock Sale Date,  plaintiff entered into certain agreements with the defendants, including the following:

(a)     A stock power, dated August 18,2003, issued for K. Barthelmes Manufacturing Company, Inc., transferring to defendant BARTHELMES all of plaintiff's 711.667 shares of defendant BARTHELMES.  A copy of the said stock power, together with a copy of stock certificate No. 82 of defendant BARTHELMES representing plaintiff's Stock, is attached hereto as "Exhibit A", and incorporated herein by reference.

(b)     A general release, dated August 18, 2003, a copy of which is attached hereto as "Exhibit B", and incorporated herein by reference.

(c)     A quitclaim deed, dated August 18, 2003, conveying plaintiff's interest in the Property located at 15 Cairn Street, Rochester, New York, a copy of which is attached hereto as "Exhibit C", and incorporated herein by reference.

(d)     An environmental indemnification agreement, dated August 18, 2003, a copy of which is attached hereto as "Exhibit D", and incorporated herein by reference.

COUNT I

27.     Plaintiff realleges as part of this cause of action each and every allegation contained in Paragraphs "1" through "26" of this Complaint, with the same force and effect as though fully set forth herein.

28.     This is a cause of action for damages and an accounting brought under the provisions of Section 10(b) of the Securities Exchange Act of 1934, as amended (Exchange Act) (15 U.S.C.A. § 78j(b)) and Rule 10(b)-5 (17 C.F.R. § 240.10b-5) promulgated under the Securities Exchange Act.

29.     At all times material to this action, defendant Arthur J. Wischmeyer, defendant Richard M. Wischmeyer, defendant Anne C. Wischmeyer, defendant Linda Dattilo, defendant John A. Wischmeyer, defendant Lori E. Neumann, defendant Thomas C. Wischmeyer, defendant Phillip Datillo, defendant Janet M. Wischmeyer, and defendant Daniel Neumann, by virtue of their positions as officers, directors and controlling shareholders of defendant BARTHELMES, had an intimate and working knowledge of the affairs of the corporation, thus placing themselves a fiduciary relationship with plaintiff and responsible to plaintiff as a minority stockholder of defendant BARTHELMES.

30.    Prior to the Stock Sale Date, in order to induce plaintiff to sell his Stock in defendant BARTHELMES, defendants represented to plaintiff that they had provided plaintiff with all material facts and information regarding the financial affairs of defendant BARTHELMES to allow plaintiff to accurately determine the value of his Stock.

31.    Due to their positions as officers, directors and controlling shareholders of defendant BARTHELMES, and their intimate and working knowledge of the affairs of the corporation, plaintiff justifiably relied upon the representations of the individual defendants.

32.    In fact, however,  defendants failed to provide plaintiff with all material facts and information regarding the financial affairs of defendant BARTHELMES as shown by the following:

33.    Plaintiff is informed and believes, and on the basis of that information and belief alleges, that prior to the Stock Sale Date, defendants obtained a grant, in the approximate amount of $500,000, from the New York State Energy and Research Development Authority (hereinafter referred to as "NYSERDA") to purchase a Strippit LVD Axel Laser and Press Brake (hereinafter referred to as the "Strippit Laser").

34.    Plaintiff is informed and believes, and on the basis of that information and belief alleges, that prior to the Stock Sale Date, defendants did acquire the Strippit Laser.

35.     At no time prior to the Stock Sale Date or thereafter did defendants disclose to plaintiff any information whatsoever regarding the NYSERDA grant or the acquisition of the Strippit Laser.

36.     Plaintiff is informed and believes, and on the basis of that information and belief alleges, that the acquisition of the Strippit Laser vastly increased the efficiency, productivity, and stock value of defendant BARTHELMES prior to the Stock Sale Date, and that such acquisition, if known to plaintiff, would have materially affected plaintiff's decision to sell his Stock.

37.     Additionally, in 2003, as a stockholder of defendant BARTHELMES, a Subchapter S corporation, for federal income tax purposes, plaintiff would have been entitled to claim a pro-rata share of the depreciation taken by defendant BARTHELMES resulting from the purchase of the Strippit Laser, an amount hereinafter referred to as the "Depreciation Amount".

38.     Plaintiff is informed and believes, and on the basis of that information and belief alleges, that such Depreciation Amount is in excess of $250,000.

39.     In or about September 2003, defendants requested that plaintiff execute an Internal Revenue Service form, pursuant to Internal Revenue Code Section 1377, whereby defendant BARTHELMES would be permitted to elect a "short year" for income tax purposes.  A copy of said request and said form are attached hereto as "Exhibit E", and are incorporated herein by reference.

40.     Plaintiff declined to sign the Internal Revenue Code Section 1377 "short year" tax election, and defendants were thereby precluded from trating

plaintiff as a shareholder on a "short year" basis under the provisions of the Internal Revenue Code.

41.     Nevertheless, in November 2003, defendants caused the issuance to plaintiff by defendant BARTHELMES an Internal Revenue Service Form K-1, a copy of which is attached hereto as "Exhibit F", and incorporated herein by reference, by which plaintiff was treated as a shareholder of defendant Barthelmes on a "short year" basis, contrary to the provisions of the Internal Revenue Code.

42.     Additionally, in March 2004, defendants caused the issuance to plaintiff by defendant BARTHELMES  a so-called  "revised" and "final" Internal Revenue Service Form K-1, a copy of which is attached hereto as "Exhibit F", and incorporated herein by reference, by which plaintiff was also treated as a shareholder of defendant Barthelmes on a "short year" basis, contrary to the provisions of the Internal Revenue Code.

43.     Plaintiff is informed and believes, and on the basis of that information and belief alleges, that neither "Exhibit F" nor "Exhibit G" reflect the true Depreciation Amount to which plaintiff was and is entitled.

44.     Unbeknownst to plaintiff at the time, and plaintiff is now informed and believes, and on the basis of that information and belief alleges, that the purpose of defendants in requesting that plaintiff execute the Internal Revenue Service Section 1377 Form, and in causing the issuance of the fraudulent Internal Revenue Service K-1 Forms, was to defraud plaintiff.

45.     The foregoing fraudulent acts of defendants are specifically excluded from the terms of the "General Release" executed by plaintiff on the Stock Sale Date, a copy of which is attached hereto as "Exhibit B", at page 2, paragraph "(a)" thereof.

46.     Pursuant to Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA) (42 U.S.C.A. § 9607 ), plaintiff is informed and believes, and on the basis of that information and belief alleges, that prior to the Stock Sale Date, plaintiff was subject to liability for the cleanup of alleged environmental contamination existing at the Property.

47.     In order to induce plaintiff to sell his Stock, defendants represented to plaintiff  that they would take the necessary action to clean up the alleged environmental contamination, and defendants on the Stock Sale Date induced plaintiff to enter into an Indemnification Agreement, a copy of which is attached hereto as Exhibit "F".

48.     However, plaintiff is informed and believes, and on the basis of that information and belief alleges, defendants had no intention to take the necessary action to clean up the alleged environmental contamination, and that such representation was false, and that, in fact, defendants have taken no action whatsoever to clean up the alleged environmental contamination.

49.     In fact, as of October 14, 2004, defendants are currently being prosecuted by the New York State Department of Environmental Conservation in a matter entitled In the Matter of a Remedial Program for Barthelmes Manufacturing under Article 27, Title 14 of the Environmental Conservation Law

by K. Barthelmes Manufacturing Company, Inc.; Index # B8-O0607-02-01; Site #C828122.

50.     At all times material to this action, the defendants, in person or through their employees or agents, communicated to the plaintiff the representations and omissions described hereinabove above through the use of the United States mail and interstate telephone in interstate commerce.

51.     Plaintiff alleges that the facts and circumstances showing that the defendants acted with the required state of mind are that, at the time that the defendants made the false or misleading representations and omissions described above, they knew that they were false.

52.     By reason of the foregoing, plaintiff has been damaged, in an amount  in excess of $500,000, the exact amount of which is presently unknown to plaintiff and will be established at the time of trial.

### COUNT II

53.     Plaintiff realleges as part of this cause of action each and every allegation contained in Paragraphs "1" through "52" of this Complaint, with the same force and effect as though fully set forth herein.

54.     When the defendants made the false and misleading representations and omissions described hereinabove, they knew them to be false, and these representations and omissions were made by defendants with the intent to defraud and deceive plaintiff and with the intent to induce plaintiff to act in the manner herein alleged.

55.     Plaintiff, at the time the false and misleading representations and omissions these representations were made by defendants, and at the time plaintiff took the actions herein alleged, was ignorant of the falsity of same and believed them to be true.

56.     In reliance on these false and misleading representations and omissions, plaintiff acted in the manner herein alleged.

57.     Had plaintiff known the actual facts, he would not have taken such actions.

58.     By reason of the foregoing, plaintiff has been damaged in an amount  in excess of $500,000, the exact amount of which is presently unknown to plaintiff and will be established at the time of trial.

59.     In doing the acts herein alleged, defendant acted with oppression, fraud, and malice, and plaintiff is entitled to punitive damages in the sum of $1,000,000.

## COUNT III

60.     Plaintiff realleges as part of this cause of action each and every allegation contained in Paragraphs "1" through "59" of this Complaint, with the same force and effect as though fully set forth herein.

61.     Plaintiff is informed and believes, and on the basis of such information and belief alleges, that prior to the time plaintiff executed the agreements set forth as Exhibits "A" through "D",  and at the times defendants issued Exhibits "E", "F" and "G", defendants conspired to mislead and deceive

plaintiff with respect to the financial affairs of defendant BARTHELMES as described hereinabove.

62.    Plaintiff is informed and believes, and on the basis of such information and belief alleges, that defendants secretly understood and agreed that they would misrepresent the financial affairs of defendant BARTHELMES solely for the purpose of deceiving plaintiff and inducing plaintiff to sell his Stock in defendant BARTHELMES.

63.    As a result of the conspiracy among defendants to defraud plaintiff, plaintiff has been damaged in an amount,  in excess of $500,000, the exact amount of which is presently unknown to plaintiff and will be established at the time of trial.

## COUNT IV

64.    Plaintiff realleges as part of this cause of action each and every allegation contained in Paragraphs "1" through "63" of this Complaint, with the same force and effect as though fully set forth herein.

65.    Plaintiff has made demand upon defendants that defendants furnish the necessary financial information regarding defendant BARTHELMES to establish the amounts due plaintiff by reason of the fraud of defendants described hereinabove.

66.    Defendants have failed and refused to furnish the information requested and required by plaintiff, and any further demand by plaintiff would be futile.

67.     Plaintiff is informed and believes, and on the basis of that information and belief alleges, that there are monies due plaintiff by reason of the fraud of defendants described hereinabove, which will be shown by a full and true accounting.

**WHEREFORE,** plaintiff requests judgment against all defendants, jointly and severally, as follows:

1.     Awarding plaintiff compensatory damages, in an amount in excess of $500,000, the exact amount to be determined at trial.

2.     Awarding plaintiff punitive damages in the amount of $1,000,000.

3.     Directing defendants to render an accounting to plaintiff for all sums due plaintiff.

4.     Awarding plaintiff costs and disbursements in this action, together with reasonable attorneys fees.

5     Granting plaintiff such other and further relief as the Court may deem proper.

## PLAINTIFFS HEREBY DEMAND TRIAL BY JURY

Dated:   March 25, 2005

ROBERT D. O'CONNELL, ESQ.
Attorney for Plaintiff
105 South Lincoln Road
P.O.Box 48
East Rochester,, New York  14445
Telephone: 585-218-9477

## <u>VERIFICATION</u>

The undersigned, Eric J. Wischmeyer, being duly sworn, states that he is the plaintiff in the within action, that the foregoing complaint is true to his own knowledge, except as to those matters stated upon information and belief, and as to those matters he believes it to be true.

_____
Eric J. Wischmeyer

Sworn to before me this

25th day of March, 2005

MICHELE L. MALIN
Notary Public, State of New York
No. 01MA6094116
Qualified In Wayne County
Commission Expires June 16, 20 07

_____
Notary Public

# STOCK POWER

**FOR VALUE RECEIVED,** _____ Eric J. Wischmeyer _____

*hereby sell, assign and transfer unto* K. Barthelmes Mfg. Co. Inc. _____

*(Please enter Social Security or other identifying number of Assignee)*

_____

Seven Hundred Eleven and Six Hundred Sixty-Seven One Thousandths----------------------------------------------------

*(711.667) Shares of the* __Common__ *Capital Stock of* _____

**K. Barthelmes Manufacturing Company, Inc.** _____

*standing in my name on the books of said Corporation represented by Certificate(s) No(s)* __82__

*herewith, and does hereby irrevocably constitute and appoint* _____

_____

*attorney to transfer the said stock on the books of said Corporation with full power of substitution in the premises.*

*Dated:* __August 8, 2003__ _____

Eric J. Wischmeyer

*In presence of*

EXHIBIT A



**EXHIBIT A-2**



# GENERAL RELEASE

***TO ALL TO WHOM THESE PRESENTS SHALL COME OR MAY CONCERN, KNOW THAT***
**ERIC J. WISCHMEYER**, an individual residing at 76 Amber Wood Place, Rochester, New York 14626

as RELEASOR,

in consideration of the sum of One Million Four Hundred and Sixty Thousand Dollars and more------------------------($1,460,000.00 and more)

received from

**K. BARTHELMES MANUFACTURING CO., INC.**, (the "Corporate Releasee"), and

**ARTHUR J. WISCHMEYER**, individually, and as CEO and Director, **RICHARD M. WISCHMEYER**, individually, and as President and Director, **ANNE C. WISCHMEYER**, individually, and as Secretary and Director, **LINDA W. DATTILO**, individually, and as Treasurer and Director, **JOHN A WISCHMEYER**, individually, and as Director, **LORIE. NEUMANN**, individually, and as Director and **THOMAS C. WISCHMEYER**, individually, and as Director, **PHILLIP B. DATTILO**, individually, and as Vice-President; **JANET M. WISCHMEYER**, individually, and as Director; and **DANIEL NEUMANN**, individually, and as a Shareholder (collectively the "Individual Releasees"),

the Corprate Releasee and the Individual Releasees collectively referred to as Releasee,

receipt whereof is hereby acknowledged, releases and discharges the Releasee, and the Releasee's attorneys, directors, shareholders, agents, employees, heirs, executors, administrators, successors and assigns from all actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, extents, executions, claims and demands whatsoever, in law, admiralty or equity, which against the Releasee, the Releasor, Releasor's heirs, executors, administrators, successors and assigns ever had, now have or hereafter can, shall or may, have for, upon, or by reason of any matter, cause or thing whatsoever from the beginning of the world to the day of the date of this RELEASE, **including but not limited to:**

(a) any indebtedness owed by the Corporate Releasee to the Releasor, representing S corporation distributions from the Corporate Releasee to the Releasor, which were subsequently loaned to the Corporate Releasee by the Releasor, whether or not evidenced by a written note or notes; and

(b) any and all claims which were or could have been asserted by the Releasor against the Releasee in those certain proceedings pending before the NYS Supreme Court, Monroe County (the "Court"), bearing Index Nos.98/00086 and 2000/05005, and having the captions set forth in more detail in attached Exhibit A, which is incorporated herein by reference (the "Proceedings").

**The foregoing not withstanding, the Releasor EXCEPTS from this Release, and reserves all rights and remedies otherwise available to him, with respect to:**

1

(a) the obligation of the Releasee to the Releasor, under that certain settlement stipulation among the parties to this Release entered into the record of the Court in the Proceedings on July 15, 2003, to treat the Releasor as a shareholder of the Corporate Releasee until the date on which his shares are redeemed by the Corporate Releasee, to properly report for the purposes of Federal and New York taxes his distributable share of the profits and losses for 2003 up to the date of redemption, and to distribute his share of any profits;

(b) any and all of the obligations of the Corporate Releasee to the Releasor under that certain Environmental Indemnification Agreement by and between the Corporate Releasee and the Releasor, dated contemporaneously with this Release; and

(c) with respect to the Individual Releasees, if an Environmental Claim (as that term is hereinafter defined) of any kind is asserted against the Releasor by any party, which arises out of the real property, and improvements, commonly known as 15 Cairn Street, Rochester, New York, then, in that event, all actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, extents, executions, claims and demands whatsoever, in law, admiralty or equity, including but not limited to claims for contribution and/or indemnification, which the Releasor now has, or may in the future have, against the Individual Releasees arising out of any such Envoronmental Claim, are specifically reserved to Releasor. The term "Environmental Claim" shall mean any claim arising out of the presence on, under or above 15 Cairn Street, Rochester, New York, of any flammable substances, explosives, radioactive materials, hazardous wastes, toxic substances, pollutants, pollution, or related materials specified as such in, or regulated under, any of the environmental laws including without limitation any "hazardous waste" as defined by the Resource Conservation and Recovery Act of 1976, as amended from time to time, and regulations promulgated under the Act and any "hazardous substance" as defined by the Comprehensive Environmental Response, Compensation and Liability Act of 1980 and the Superfund Amendment and Reauthorization Act of 1986, as amended from time to time, and regulations promulgated those Acts.

The words "RELEASOR" and "RELEASEE" include all releasors and all releasees under this RELEASE, jointly and severally.

This RELEASE may not be changed orally.

**IN WITNESS WHEREOF**, the RELEASOR has hereunto set RELEASOR'S hand and seal on the _18_ᵗʰday of August, 2003.

*IN THE PRESENCE OF:*

Eric Wischmeyer          8/18/03

2

County of Monroe:
State of New York: SS.

On this 18 day of August, Two Thousand and Three before me, the subscriber, personally appeared Eric Wischmeyer, to me known and known to me to be the individuals described in, and who executed the foregoing RELEASE, and duly acknowledged to me that he executed the same

Notary Public

KENNETH BERSANI, ESQ.
Notary Public, State of New York
Qualified in Monroe County
Commission Expires March 30, 2006

3

EXHIBIT B-3

**EXHIBIT A**

STATE OF NEW YORK
SUPREME COURT   COUNTY OF MONROE

ERIC J. WISCHMEYER, individually and
derivatively as a stockholder of K. Barthelmes
Manufacturing Co., Inc.,

                              Petitioner,

    -vs-

K. BARTHELMES MANUFACTURING CO., INC.,
ARTHUR J. WISCHMEYER, individually, and as
CEO an Director, RICHARD M. WISCHMEYER,
individually, and as President and Director, ANNE C.          Index No. 98/00086
WISCHMEYER, individually, and as Secretary and
Director, LINDA W. DATTILO, individually, and as
Treasurer and Director, JOHN A WISCHMEYER,
individually, and as Director, LORI E. NEUMANN,
individually, and as Director and THOMAS C.
WISCHMEYER, individually, and as Director,

                              Respondents.

ERIC J. WISCHMEYER, individually and
derivatively as a stockholder of K. Barthelmes
Manufacturing Co., Inc.,

                              Petitioner,

    -vs-

K. BARTHELMES MANUFACTURING CO., INC.,
ARTHUR J. WISCHMEYER, individually, and as
CEO an Director, RICHARD M. WISCHMEYER,
individually, and as President and Director. ANNE C.          Index No. 2000/05005
WISCHMEYER, individually, and as Secretary and
Director, LINDA W. DATTILO, individually, and as
Treasurer and Director, JOHN A WISCHMEYER,
individually, and as Director, LORI E. NEUMANN,
individually, and as Director and THOMAS C.
WISCHMEYER, individually, and as Director,
PHILLIP B. DATTILO, individually, and as Vice-
President; JANET M. WISCHMEYER, individually,
and as Director; and DANIEL NEUMANN,
individually, and as a Shareholder,

                              Respondents.

4

**EXHIBIT B-4**

# QUITCLAIM DEED

**THIS INDENTURE**, made this 19ᵗʰ day of August, 2003, between

Eric J. Wischmeyer, residing at 7 Sarah Circle, Spencerport, New York 14624 ("Grantor)" and Cairn Street I, LLC, at 15 Cairn Street, Rochester, New York, ("Grantee").

**WITNESSETH**, that the grantor, in consideration of One Dollar (S1.00) lawful money of the United States and other good and valuable consideration to grantor in hand paid by the grantee, does hereby remise, release and quitclaim unto the grantee, its successors and assigns, forever,

ALL THAT CERTAIN PLOT, PIECE OR PARCEL OF LAND, with buildings and improvements thereon erected, situate, lying and being in the Town of Gates (now City of Rochester), Monroe County, New York, beginning in the center of Buell Road, at the point of intersection of south line of the Kelly Farm, in Lot No. 167 of Town of Gates, (it being a piece of land formerly conveyed to Silas Cornell by William Buell) with the northeast corner of land formerly conveyed to James Armstrong by William Buell and running thence, North 62o 30' west, along the said division line to the easterly boundary line of the Genessee Valley Terminal Railroad Company's land; thence along the eastern boundary line of said Railroad Company's land to the southerly line of land formerly conveyed to Herod Newton; thence North 87o 30' east, along said Newton's south line to lands of the Buffalo, Rochester and Pittsford Railway Company; thence along the westerly boundary line of said last mentioned Railway Company's land, to the center of Buell Avenue; thence in southwesterly direction along the center line of Buell Avenue to the point of beginning, containing after deducting, land conveyed to two railroads, about 7.77 acres, more or less.

The above described premises being part of the premises conveyed to Harry T. Kelly by Elizabeth Kelly, et al, by deed dated February 16, 1899, recorded in Monroe County Clerk's Office in Liber 610 of Deeds, page 234.

Reference thereto being had for further description, SUBJECT, however, to the covenants, conditions and agreements contain in certain contracts mentioned and described in deed made by Louis P Willsea and wife to Kurt Barthelmes dated July 28, 1920.

EXCEPTING & PRESERVING therefrom all the land conveyed by Kurt Barthelmes and Edith, his wife, to Pennsylvania Glass and Sand Company by deed dated October 1, 1921, and recorded June 9, 1922, in Monroe County Clerk's Office in Liber 1166 of Deeds, page 471.

**EXHIBIT C**

Tax Account No. 120.530-01-004

Property Address:   253 Cairn Street
and Tax Billing Address:  15 Cairn Street
         Rochester, NY 14611

Subject to covenants, easements and restrictions of record affecting said premises if any.

**TOGETHER** with the appurtenances and all the estate and rights of the grantor in and to said premises,

**TO HAVE AND TO HOLD** the premises herein granted unto the grantee, its successors and assigns, forever.

This deed is subject to the trust provisions of Section 13 of the Lien Law.

**IN WITNESS WHEREOF,** the grantor has executed this deed the day and year first above written.

                 8/18/03
            Eric J. Wischmeyer

STATE OF NEW YORK)
COUNTY OF MONROE )   SS:

   On this _____ day of August, 2003, before me, the undersigned, personally appeared Eric J. Wischmeyer, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person on behalf of whom the individual acted, executed the instrument.

            KENNETH BRRBAND, ESQ.
           Notary Public, State of New York
            Qualified in Monroe County
         Commission Expires March 30, _____

EXHIBIT C-2

## ENVIRONMENTAL INDEMNIFICATION AGREEMENT

This environmental indemnification agreement ("Agreement"), dated August 18, 2003, is between Eric J. Wischmeyer, an individual residing at 76 Amber Wood Place, Rochester, New York 14626 ("Wischmeyer"), and K. Barthelmes Manufacturing Co., Inc, a New York corporation having its principal place of business at  15 Cairn Street, Rochester, New York 14611 (the "Company").

### RECITALS

Wischmeyer and the Company are parties to certain proceedings pending before the NYS Supreme Court, Monroe County (the "Court"), bearing Index Nos.98/00086 and 2000/05005, and having the captions set forth in more detail in attached Exhibit A, which is incorporated herein by reference (the "Proceedings"). By stipulation entered into the record of the Court in the Proceedings on July 15, 2003, the parties have comprehensively settled all disputes outstanding between them, which were asserted in the Proceedings or which otherwise existed (the "Stipulation"). It is a requirement of the Stipulation that the Company indemnify and hold Wischmeyer harmless from and against any claim for Contamination (as that term is hereinafter defined) asserted against him which arises out of real property located at 15 Cairn Street, Rochester, New York 14611, together with the improvements thereon and other real and personal property described in more detail in attached Exhibit B (collectively the "Property"). The Company has operated a manufacturing facility at the Property for a substantial period of time. Wischmeyer is a part owner, as tenant in common, of the Property, and pursuant to the Stipulation will, contemporaneously with the execution and delivery of this Agreement, transfer his interest in the Property by quitclaim deed to certain parties to the Proceedings, or their designee. It is a requirement of the Stipulation that the Company execute and deliver this Agreement to Wischmeyer.

Therefore, in consideration of the settlement reflected in the Stipulation, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Company and Wischmeyer agree as follows:

### SECTION ONE

### DEFINITIONS

A.  "Wischmeyer" includes Eric J. Wischmeyer, and his successors, heirs and assigns.

B.  "Company" includes K. Barthelmes Manufacturing Co., Inc., and its successors and assigns.

C.  "Environmental Laws" means all federal, state or local laws, ordinances, rules, regulations

1

or policies governing the use, storage, treatment, transportation, manufacture, refinement, handling, production or disposal of hazardous materials.

D. "Hazardous Materials" means any flammable substances, explosives, radioactive materials, hazardous wastes, toxic substances, pollutants, pollution, or related materials specified as such in, or regulated under, any of the environmental laws including without limitation any "hazardous waste" as defined by the Resource Conservation and Recovery Act of 1976, as amended from time to time, and regulations promulgated under the Act and any "hazardous substance" as defined by the Comprehensive Environmental Response, Compensation and Liability Act of 1980 and the Superfund Amendment and Reauthorization Act of 1986, as amended from time to time, and regulations promulgated those Acts.

## SECTION TWO

## INDEMNIFICATION

Company shall defend and indemnify Wischmeyer and hold Wischmeyer harmless from and against all loss, liability, damage and expense, including reasonable attorneys' fees, suffered or incurred by Wischmeyer as the result of any claim from any party, private or governmental, under or on account of the Environmental Laws or any similar laws or regulations, including the assertion of any lien, as a result of: (i) the presence of any hazardous materials or asbestos or the threat of these affecting the Property, whether or not the same originates or emanates from the Property or any contiguous real estate, or (ii) any other matter affecting the Property within the jurisdiction of the Environmental Protection Agency, any other federal agency, or any state or local environmental agency. (the foregoing matters set forth in items (i) and (ii) collectively referred to as "Contamination"). Company's obligations under this section arise upon the Environmental Protection Agency, any other federal agency or any state or local environmental agency, or any other party, taking or threatened any action against Wischmeyer in connection with the presence of any such Contamination. It shall not be a defense to the Company's obligations of indemnification under this Agreement that all or any part of the Contamination was caused or created, directly or indirectly, in whole or in part, by Wischmeyer, by his action or inaction (including by his sole: negligence; gross negligence or willful act).

## SECTION THREE

## SURVIVABILITY

The obligations of Company under this agreement shall survive any transfer of title to the Property by sale, gift, foreclosure or otherwise.

2

## EXHIBIT D-2

## SECTION FOUR

## UNSECURED OBLIGATIONS

The obligations under this agreement are unsecured.

## SECTION FIVE

## SEVERABILITY

Wherever possible, each provision of this Agreement shall be interpreted so as to be valid and enforceable to the fullest extent permitted by law. If any provision of this Agreement or the application of any provision to any person or circumstance is, to any extent, held to be invalid, illegal or unenforceable under applicable law, the remainder of this agreement, or the application of a provision to persons or circumstances other than those as to which it is invalid, illegal or unenforceable, is not affected.

## SECTION SIX

### ADDRESSES FOR NOTICES

Except when otherwise required by law, all notices required or permitted to be given under this agreement must be (a) in writing, and (b) until otherwise specified in a written notice by the respective parties or any of them, must be sent to the parties at their following respective addresses:

If to Company:     15 Cairn Street
                       Rochester, NY 14611

With a copy to:    Remington, Gifford, William & Colicchio, LLP
                       183 E. Main Street, Suite 1400
                       Rochester, NY 14604
                       Attn: William R. Alexander

If to Wischmeyer:  76 Amber Wood Place
                       Rochester, New York 14626

With a copy to:    Trevett, Lenweaver & Salzer, P.C.
                       2 State Street, Suite 1000
                       Rochester, NY 14614
                       Attn: James Gocker

EXHIBIT D-3

Each notice, demand or request is deemed to have been properly served for all purposes if personally delivered or deposited into the United States Mail or certified mail, return receipt requested, or by overnight delivery service, postage prepaid, to its addressee at its address as set forth in this section. Each notice, demand or request is deemed to have been received by its addressee when personally delivered, the next business day after the date of mailing by overnight delivery service, and two business days after the date of mailing by certified mail.

## SECTION SEVEN

## GOVERNING LAW AND EFFECT

This Agreement is governed by and construed in accordance with the laws of the State of New York applicable to contracts executed and to be performed in that State. This Agreement shall be binding upon, and shall be the benefit for, the parties' respective successors, heirs and assigns.

## SECTION EIGHT

## SECTION TITLES

The section titles contained in this agreement are for convenience of reference only and do not limit or otherwise affect the meaning or interpretation of any provision of this agreement.

## COUNTERPARTS

This Agreement may be executed in two or more counterparts, each of which is deemed to be an original, but all of which constitute one and the same instrument.

## SECTION TEN

## AMENDMENTS AND WAIVERS

No provision of this Agreement may be amended, waived or terminated except by an instrument in writing setting forth the terms of such amendment, waiver or termination and signed by the party against whom enforcement is sought. No delay by Wischmeyer in enforcing any right or remedy under this agreement constitutes a waiver of any such right or remedy.

4

EXHIBIT D-4

## SECTION ELEVEN

## CONSTRUCTION

Unless the context of this agreement otherwise clearly requires, references to the plural include the singular and the singular the plural, and "or" has the inclusive meaning represented by the phrase "and/or." The words "in this Agreement" refer to this Agreement as a whole and not to any particular provision of this Agreement.

The parties have executed and delivered this agreement on August 18th, 2003.

K. Barthelmes Manufacturing Co., Inc.

By: _____

Eric J. Wischmeyer

5

EXHIBIT D-5

ERNEST E. READ
CERTIFIED PUBLIC ACCOUNTANT
2005 LYELL AVENUE
ROCHESTER, NEW YORK 14606
TELEPHONE 254-1920

November 7, 2003

Mr. Eric Wischmeyer
7 Sarah Circle
Spencerport, New York, 14624

Re:  K. Barthelmes Mfg. Co., Inc.

Dear Eric;

Enclosed for your signature is a statement for the
Internal Revenue Service, that you consent to the "Short Year
Closing the Books Method for the short tax year January 1 -
August 18, 2003, the date of your buy-out.

As tax returns are due, would you please sign the en-
closed consent and return it to me in the enclosed stamped
addressed envelope as soon as possible.

Your K-1 will be forwarded shortly.

Thank you.

Very truly yours

Ernest E. Read, CPA

encl:  consent
cc:    K. Barthelmes Mfg. Co., Inc.

EXHIBIT E

Eric Wischmeyer                                    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

    Taxpayer, a share holder in a S Corporation, consents t
the Corporation (K. Barthelmes Mfg. Co., Inc., 16-0343580)
electing to use the "Closing the Books Method" for the short
tax year January 1, 2003 - August 18, 2003 and not the pro-
rata allocation method.

                                        Eric Wischmeyer

**EXHIBIT E-2**

| SCHEDULE K-1 (Form 1120S) | Shareholder's Share of Income, Credits, Deductions, etc. | OMB No. 1545-0130 |
|---|---|---|
| Department of the Treasury Internal Revenue Service | ▶ See separate instructions. For calendar year 2002 or tax year beginning **Jan. 1,** 2002, and ending **Aug. 18,** 2003 | **2002** |

| Shareholder's identifying number ▶ **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** | Corporation's identifying number ▶ **16-0343580** |
|---|---|
| Shareholder's name, address, and ZIP code | Corporation's name, address, and ZIP code |
| **Eric Wischmeyer** **7 Sarah Circle** **Spencerport, N. Y., 14624** | **K. Barthelmes Mfg. Co., Inc.** **15 Cairn St.** **Rochester, N. Y., 14611** |

A  Shareholder's percentage of stock ownership for tax year (see instructions for Schedule K-1) ......... ▶ **35.6090** %

B  Internal Revenue Service Center where corporation filed its return ▶ __**Andover**__

C  Tax shelter registration number (see instructions for Schedule K-1) .................................. ▶ __**N/A**__

D  Check applicable boxes:    (1) ☒ Final K-1    (2) ☐ Amended K-1

| | (a) Pro rata share items | | (b) Amount | (c) Form 1040 filers enter the amount in column (b) on: |
|---|---|---|---|---|
| | **1** Ordinary income (loss) from trade or business activities ......... | 1 | 8,990. | See the Shareholder's Instructions for Schedule K-1 (Form 1120S) |
| | **2** Net income (loss) from rental real estate activities ............. | 2 | | |
| | **3** Net income (loss) from other rental activities ................. | 3 | | |
| | **4** Portfolio income (loss): | | | |
| Income (Loss) | **a** Interest ......................... | 4a | 6,830. | Sch. B, Part I, line 1 |
| | **b** Ordinary dividends.................. | 4b | | Sch. B, Part II, line 5 |
| | **c** Royalties......................... | 4c | | Sch. E, Part I, line 4 |
| | **d** Net short-term capital gain (loss) ...... | 4d | | Sch. D, line 5, col. (f) |
| | **e** (1) Net long-term capital gain (loss) ...... | 4e(1) | | Sch. D, line 12, col. (f) |
| | (2) 28% rate gain (loss) ............... | 4e(2) | | Sch. D, line 12, col. (g) |
| | (3) Qualified 5-year gain ............. | 4e(3) | | Line 5 of worksheet for Sch. D, line 29 |
| | **f** Other portfolio income (loss) (attach schedule) | 4f | | (Enter on applicable line of your return.) |
| | **5** Net section 1231 gain (loss) (other than due to casualty or theft) | 5 | | See Shareholder's Instructions for Schedule K-1 (Form 1120S). |
| | **6** Other income (loss) (attach schedule) | 6 | | (Enter on applicable line of your return.) |
| Deductions | **7** Charitable contributions (attach schedule) ................... | 7 | 285. | Sch. A, line 15 or 16 |
| | **8** Section 179 expense deduction .......................... | 8 | 7,643. | See the Shareholder's Instructions for Schedule K-1 (Form 1120S). |
| | **9** Deductions related to portfolio income (loss) (attach schedule) .. | 9 | | |
| | **10** Other deductions (attach schedule) ...................... | 10 | | |
| Investment Interest | **11a** Interest expense on investment debts ...................... | 11a | | Form 4952, line 1 |
| | **b** (1) Investment income included on lines 4a, 4b, 4c, & 4f above | 11b(1) | | See Shareholder's Instructions for Schedule K-1 (Form 1120S). |
| | (2) Investment expenses included on line 9 above .......... | 11b(2) | . | |
| Credits | **12a** Credit for alcohol used as fuel ......................... | 12a | | Form 6478, line 10 |
| | **b** Low-income housing credit: | | | |
| | (1) From section 42(j)(5) partnerships .................. | 12b(1) | | Form 8586, line 5 |
| | (2) Other than on line 12b(1) ....................... | 12b(2) | . | |
| | **c** Qualified rehabilitation expenditures related to rental real estate activities ........................................ | 12c | | See the Shareholder's Instructions for Schedule K-1 (Form 1120S). |
| | **d** Credits (other than credits shown on lines 12b and 12c) related to rental real estate activities......................... | 12d | | |
| | **e** Credits related to other rental activities................... | 12e | | |
| | **13** Other credits .................................. | 13 | | |

For Paperwork Reduction Act Notice, see the Instructions for Form 1120S.          Schedule K-1 (Form 1120S) 2002

JVA    2   1208K112    TWF 1008A

**EXHIBIT F**

# *Barthelmes Manufacturing Company, Inc.*

15 Cairn Street  Rochester, NY 14611-2491  Tel 585-328-8140 fax 328-5932

March 1, 2004

Fred Stoffel, CPA
31 Union Street
Spencerport, NY 14559

RE: Eric Wischmeyer K-1 2003 Report

Dear Sir:

Please use the revised K-1 statement Eric received and disregard any previous report
dated before February 6.

Sincerely,

Richard M. Wischmeyer
President

EXHIBIT G

| SCHEDULE K-1<br>(Form 1120S)<br><br>Department of the Treasury<br>Internal Revenue Service | **Shareholder's Share of Income, Credits, Deductions, etc.**<br>▶ See separate instructions.<br>For calendar year 2002 or tax year<br>beginning  Jan. 1,  2002 and ending  Aug. 18,  , 2003 | | OMB No. 1545-0130<br><br>**2002** |
|---|---|---|---|
| Shareholder's identifying number ▶  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 | | Corporation's identifying number ▶  16-0343580 | |
| Shareholder's name, address, and ZIP code<br>Eric Wisniewski<br>7 Sarah Circle<br>Spencerport, N. Y., 14624 | | Corporation's name, address, and ZIP code<br>K. Barthelmes Mfg. Co., Inc.<br>15 Cairn St.<br>Rochester, N. Y., 14611 | |

A  Shareholder's percentage of stock ownership for tax year (see instructions for Schedule K-1) . . . . . . . ▶ 25.6090 %

B  Internal Revenue Service Center where corporation filed its return ▶ ............................................. Andover

C  Tax shelter registration number (see instructions for Schedule K-1) . . . . . . . . . . . . . . . ▶ ..................... N/A

D  Check applicable boxes:    (1) ☐ Final K-1    (2) ☒ Amended K-1

| | (a) Pro rata share items | | (b) Amount | (c) Form 1040 filers enter the amount in column (b) on: |
|---|---|---|---|---|
| Income (Loss) | 1  Ordinary income (loss) from trade or business activities . . | 1 | 3,956. | See page 4 of the Shareholder's Instructions for Schedule K-1 (Form 1120S). |
| | 2  Net income (loss) from rental real estate activities . . | 2 | | |
| | 3  Net income (loss) from other rental activities . . | 3 | | |
| | 4  Portfolio income (loss): | | | |
| | a  Interest . . . . . . . . . . . . . . . | 4a | 6,830. | Sch. B, Part I, line 1 |
| | b  Ordinary dividends . . . . . . . . . . | 4b | | Sch. B, Part I, line 5 |
| | c  Royalties . . . . . . . . . . . . . . | 4c | | Sch. E, Part I, line 4 |
| | d  Net short-term capital gain (loss) . . . . | 4d | | Sch. D, line 5, col. (f) |
| | e  (1) Net long-term capital gain (loss) . . . | 4e(1) | | Sch. D, line 12, col. (f) |
| | (2) 28% rate gain (loss) . . . . . . | 4e(2) | | Sch. D, line 12, col. (g) |
| | (3) Qualified 5-year gain . . . . . . | 4e(3) | | Line 5 of worksheet for Sch. D, line 29 |
| | f  Other portfolio income (loss) (attach schedule) . . | 4f | | (Enter on applicable line of your return.) |
| | 5  Net section 1231 gain (loss) (other than due to casualty or theft) | 5 | | See Shareholder's Instructions for Schedule K-1 (Form 1120S). |
| | 6  Other income (loss) (attach schedule) . . . . . | 6 | | (Enter on applicable line of your return.) |
| Deductions | 7  Charitable contributions (attach schedule) . . . . | 7 | 289. | Sch. A, line 15 or 16 |
| | 8  Section 179 expense deduction . . . . . . | 8 | | See page 5 of the Shareholder's Instructions for Schedule K-1 (Form 1120S). |
| | 9  Deductions related to portfolio income (loss) (attach schedule) | 9 | | |
| | 10  Other deductions (attach schedule) . . . . . | 10 | | |
| Investment Interest | 11a  Interest expense on investment debts . . . . . | 11a | | Form 4952, line 1 |
| | b  (1) Investment income included on lines 4a, 4b, 4c, and 4f above | 11b(1) | | See Shareholder's Instructions for Schedule K-1 (Form 1120S). |
| | (2) Investment expenses included on line 9 above . . | 11b(2) | | |
| Credits | 12a  Credit for alcohol used as fuel . . . . . . . | 12a | | Form 6478, line 10 |
| | b  Low-income housing credit: | | | |
| | (1) From section 42(j)(5) partnerships . . . . | 12b(1) | | Form 8586, line 5 |
| | (2) Other than on line 12b(1) . . . . . . | 12b(2) | | |
| | c  Qualified rehabilitation expenditures related to rental real estate activities . . . . . . . . . . . . . | 12c | | See pages 6 and 7 of the Shareholder's Instructions for Schedule K-1 (Form 1120S). |
| | d  Credits (other than credits shown on lines 12b and 12c) related to rental real estate activities . . . . . . . . | 12d | | |
| | e  Credits related to other rental activities . . . . | 12e | | |
| | 13  Other credits . . . . . . . . . . . . | 13 | | |

For Paperwork Reduction Act Notice, see the Instructions for Form 1120S.        Cat. No. 11520D        Schedule K-1 (Form 1120S) 2002

*THIS IS A AMENDED RETURN*
*2ND RETURN! FINAL!*

EXHIBIT G-2