UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

ERIC J. WISCHMEYER,

                          Plaintiff,           05-CV-6134T

              v.                               **DECISION
                                               and ORDER**

ARTHUR J. WISCHMEYER, RICHARD M.
WISCHMEYER, JOHN A. WISCHMEYER,
ANNE C. WISCHMEYER, JANET M.
WISCHMEYER, THOMAS C. WISCHMEYER,
PHILLIP B. DATTILO, LINDA DATTILO,
LORI E. NEUMANN, DANIEL NEUMANN, and
K. BARTHELMES MANUFACTURING COMPANY,
INC.

                          Defendants.

_____

### <u>INTRODUCTION</u>

Eric J. Wischmeyer ("plaintiff") brings this lawsuit against K. Barthelmes Manufacturing Company, Inc. ("Barthelmes"), Arthur J. Wischmeyer, Richard M. Wischmeyer, John A. Wischmeyer, Anne C. Wischmeyer, Janet M. Wischmeyer, Thomas C. Wischmeyer, Phillip B. Dattilo, Linda Dattilo, Lori E. Neumann and Daniel Neumann (collectively "defendants"), pursuant to Section 10(b) of the Securities Exchange Act of 1934, (codified at 15 U.S.C. § 78j(b)), and Rule 10b-5 promulgated under the Securities Exchange Act of 1934, (codified at 17 C.F.R. § 240.10b-5). Plaintiff claims that the defendants misrepresented the financial affairs of Barthelmes solely for the purpose of deceiving plaintiff and inducing him to sell his stock to Barthelmes.

By motion dated December 15, 2005, defendants move to dismiss plaintiff's Complaint pursuant to Rule 56 of the Federal Rules of Civil Procedure, and the Securities Exchange Act of 1934. Defendants contend that granting summary judgment is appropriate on the basis that there is no disputed material issue of fact and defendants are entitled to judgment as a matter of law.  For the reasons set forth below, I hereby grant defendants' motion for summary judgment and dismiss plaintiff's Complaint with prejudice.

## BACKGROUND

### I. The Parties

Plaintiff was employed by Barthelmes until approximately 1996. He also owned 711.667 shares of capital stock of Barthelmes, which is engaged in the design, manufacture and sale of fabricated metal products with its principal place of business located at 15 Cairn Street, Rochester, New York, 14611 (the "Barthelmes Property").

The plaintiff sued Barthelmes and its individual directors including Arthur J. Wischmeyer, CEO, Richard M. Wischmeyer, President, Anne C. Wischmeyer, Secretary, Linda Dattilo, Treasurer, John A. Wischmeyer, Janet M. Wischmeyer, Thomas C. Wischmeyer, Phillip B. Dattilo, Lori E. Neumann, and Daniel Neumann.

### II. The State Court Proceeding

Plaintiff originally commenced an action against the defendants in New York State Supreme Court on April 6, 2000.  On

2

August 20, 2001 plaintiff served a Restated Verified Petition seeking dissolution of Barthelmes pursuant to New York BCL § 1104-a (the "State court action") alleging waste, mismanagement and oppression. Thereafter, Barthelmes elected "to purchase the shares owned by the [plaintiff] at their fair market value and upon such terms and conditions as may be approved by the court in accordance with New York BCL § 1118." See Defendants' Statement of Material Facts at ¶6. Pursuant to BCL § 1118, Barthelmes' election was irrevocable. See McKinney's Business Corporation Law § 1118(a). In addition, the parties to the State court action stipulated in November 2001 that plaintiff's shares will be valued as of December 31, 2000 ("Effective Date of Valuation").

The presiding Supreme Court judge, Justice Stander appointed an independent appraiser to advise the court as to the fair value of plaintiff's interest in Barthelmes as of the Effective Date of Valuation in accordance with BCL § 1118. The appraiser did in fact perform an appraisal of plaintiff's shares and under the supervision of Justice Stander, the parties reached an agreement on the fair value of plaintiff's interest in Barthelmes. Plaintiff's opposition papers indicate that the settlement reached by the parties and orally verbalized to Justice Stander on July 15, 2003 (the "July 15, 2003 settlement"), merely states an amount that defendants indicated they would be willing to pay plaintiff, but makes no mention of the fair value of plaintiff's shares or of any

3

Effective Date of Valuation.

While the July 15, 2003 settlement transcript does not specifically mention the fair value or Effective Date of Valuation, the judge questioned all the parties, including plaintiff, if each understood, agreed with and consented to the terms of the settlement. Plaintiff clearly responded that he did.[1] Plaintiff was represented by counsel as indicated in the same transcript of proceedings and was satisfied with the representation given to him by both his counsel and his firm in negotiating the settlement. The November 2001 stipulation provided that plaintiff's shares would be valued as of December 31, 2000 and the stipulation was incorporated into the Order of Justice Stander dated January 11, 2002. On August 18, 2003 ("Stock Sale Date"), plaintiff executed a General Release and Stock Power whereby plaintiff formally

---

[1]In a very detailed, comprehensive manner, the settlement was placed on the record and provided in pertinent part as follows: (Mr. Eric Wischmeyer, under oath was asked by the court, Justice Stander)

Q. (The Court): Mr. Eric Wischmeyer, let me ask you these questions, since you are the moving party here. You have heard the stipulation that has been put on the record; do you have any questions for your attorney [Mr. Thomas C. Gocker] or for the Court concerning the terms of the stipulation?
A. Eric Wischmeyer: No
Q. The Court: Do you understand it?
A. Eric Wischmeyer: Yes
Q. The Court: Do you agree and consent to the terms of the stipulation –
A. Eric Wischmeyer: Yes, I do –
Q. The Court (Continuing) – represented by Mr. Gocker and his firm throughout these proceedings?
A. Eric Wischmeyer: Yes
Q. The Court: Are you satisfied with his representation?
A. Eric Wischmeyer: Yes.
Q. The Court: Okay. Thank you.

See Defendants' Answer, Ex. C, July 15, 2003 Settlement Transcript, p. 10 lines 3-22.

transferred 711.667 shares of Barthelmes stock to defendants and released defendants from any liability with reference to the sale and transfer of the stocks.

III.  New York State Energy and Research Development Authority Grant

Prior to the Stock Sale Date, Barthelmes received a cost sharing grant from the New York State Energy and Research Development Authority (the "NYSERDA Grant") to purchase a Strippit LVD Axel Laser and Press Brake ("Strippit Laser").  The Cost Sharing Agreement was signed by NYSERDA and returned to defendants on February 26, 2003.  The purchase order for the Strippit Laser is dated August 14, 2003 and was delivered in December 2003.

IV.  "Short Year" Tax Return

On or about September 2003, defendants requested plaintiff to execute an IRS form pursuant to Internal Revenue Code § 1377 whereby Barthelmes would be permitted to elect a "short year" for income tax purposes.  Plaintiff refused to sign the § 1377 tax election form.  Notwithstanding such refusal, in November 2003 defendants issued an IRS form K-1 where plaintiff was treated as a shareholder on a "short year" basis.  As a Sub S shareholder, plaintiff claims that he would have been entitled to claim a pro rata share of the depreciation taken by Barthelmes resulting from the purchase of the Strippit Laser.  Plaintiff states that he is entitled to over $100,000 as a write-off against his personal income taxes for the year 2003.

**DISCUSSION**

## I.   Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure provides that a party is entitled to summary judgment as a matter of law only where, "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact. . . ." F.R.C.P. 56(c) (2003).  The party seeking summary judgment bears the burden of demonstrating that no genuine issue of material fact exists, and in making the decision the court must draw all reasonable inferences in favor of the party against whom summary judgment is sought.  <u>Ford v. Reynolds</u>, 316 F.3d 351, 354 (2d Cir.2003) (<u>citing</u> <u>Marvel Characters v. Simon</u>, 310 F.3d 280, 285-86(2d Cir.2002)). "Summary judgment is improper if there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party."  <u>Id.</u>

## II.   Section 10 of the Securities and Exchange Act of 1934.

Section 10 of the Securities and Exchange Act of 1934 provides in relevant part that:

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange
>
>        *    *    *
>
> (b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or

6

> deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

15 U.S.C. § 78j (1981).  Federal regulations adopted pursuant to the Securities Act further provide that it shall be "unlawful for any person . . . [t]o make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading . . . ."  17 C.F.R. § 240.10b-5.

To make out a prima facie case under Section 10(b), a plaintiff must plead that "in connection with the purchase or sale of securities, the defendant, acting with scienter, made a false material representation or omitted to disclose material information and that plaintiff's reliance on defendant's action caused him injury." Bloor v. Carro, Spanbock, Londin, Rodman & Fass, 754 F.2d 57, 61 (2d Cir. 1985); Schlick v. Penn-Dixie Cement Corp., 507 F.2d 374, 381 (2d Cir. 1974), cert. denied, 421 U.S. 976 (1975); Haberman v. Murchison, 468 F.2d 1305, 1311 (2d Cir. 1972); Lerner v. FNB Rochester Corp, 841 F. Supp. 97, 100 (W.D.N.Y. 1993) (Telesca, J.).  Because plaintiff has failed to demonstrate that defendants made any material misstatements or omissions in connection with the purchase of plaintiff's Barthelmes stock and that the misrepresentations and omissions complained of caused injury to plaintiff, I find that plaintiff has failed to state a

7

claim for relief under Section 10(b).

    A.    <u>Plaintiff has failed to allege that defendants made any material misstatements or omissions "in connection with" the purchase of plaintiff's stocks.</u>

An essential element of a 10(b) claim is that the defendant made material misstatements or omissions "in connection with" the purchase or sale of securities. "[T]he materiality of the information misstated or withheld is determined in light of what the defendants knew at the time the plaintiff committed himself to sell the stock." <u>Castellano, v. Young & Rubicam, Inc.</u>, 257 F.3d 171, 181 (2nd Cir. 2001) (<u>quoting</u> <u>Michaels v. Michaels</u>, 767 F.2d 1185, 1195 (7th Cir. 1985)); <u>Alliance Pharm. Corp. v. Sec. Litig.</u>, 279 F.Supp.2d 171, 186 (S.D.N.Y. 2003). The Second Circuit's holding in <u>Castellano</u> reaffirmed the reasoning of <u>Radiation Dynamics, Inc. v. Goldmuntz</u>, 464 F.2d 876, 890-91 (2d Cir. 1972) in which this Circuit found that it was reasonable to describe the time at which a security order is made as the time when "the parties to the transaction are committed to one another." <u>Radiation Dynamics</u>, 464 F.2d at 891.

At issue in <u>Radiation Dynamics</u> was whether defendants acquired material inside information after they had already entered a contract to sell certain securities. The court used the term "commitment" in its charge to the jury and the District Judge explained "that the time that an insider places an order, rather than the time of its ultimate execution, be determinative for Rule

10b-5 purposes." Id. at 891 (citing Ryan v. J. Walter Thompson Co., 453 F.2d 444, 447 (2d Cir. 1971); Fershtman v. Schectman, 450 F.2d 1357, 1360 (2d Cir. 1971), cert. denied, 405 U.S. 1066 (1972). The district judge further instructed and the Second Circuit affirmed that:

> [C]ommitment is a simple and direct way of
> designating the point at which, in the
> classical contractual sense, there was a
> meeting of the minds of the parties; it marks
> the point at which the parties obligated
> themselves to perform what they had agreed to
> perform even if the formal performance of
> their agreement is to be after a lapse of
> time.

Id. at 891. Second Circuit cases thus hold that if a party is already bound to purchase or sell securities, later misrepresentations or omissions do not constitute fraud in connection therewith. Radiation Dynamics, 464 F.2d at 891; Pittsburgh Coke & Chem. Co. v. Bollo, 421 F.Supp. 908 (E.D.N.Y. 1976), aff'd, 560 F.2d 1089 (2d Cir. 1977) (For purposes of a Rule 10b-5 claim, events occurring after the commitment to purchase stock has been made are irrelevant).

Reviewing the defendants' allegedly actionable conduct in a light most favorable to the plaintiff, and in the context of the information that was available to plaintiff and defendants at the time the alleged omissions and misstatements were made, (as set forth in the Complaint and documents incorporated therein as well as exhibits provided in these submissions), I find that plaintiff

has failed to allege any misstatements or omissions by the defendants that would support a Section 10(b) claim.

Defendants contend that Barthelmes elected to purchase the shares owned by the plaintiff at their fair market value and upon terms and conditions approved by the court pursuant to BCL § 1118 and that Barthelmes' election was irrevocable. Defendants further contend that the parties to the State court action stipulated in November 2001 that plaintiff's shares would be valued as of December 31, 2000 and that stipulation was incorporated into the Order of Justice Stander dated January 11, 2002. An independent appraiser, under Justice Stander's supervision, prepared an appraisal of plaintiff's shares and the parties reached an agreement on the fair value of plaintiff's interest as of the Effective Date of Valuation in accordance with BCL § 1118.  In contrast, plaintiff incorrectly contends that there was no contract binding the plaintiff to sell his shares until the execution of the Stock Power on August 18, 2003. Moreover, plaintiff argues that at any time prior to settlement of the State court action, he could have voluntarily discontinued his action and retained his shares. Plaintiff claims that even if his withdrawal was deemed by the state court to be with prejudice, he would have only sacrificed his right to judicial dissolution but not his remedies under 10b-5.

Plaintiff's statements in paragraphs 30 through 36 of the Complaint claim that prior to the Stock Sale Date, defendants

10

failed to disclose to plaintiff that Barthelmes received a cost sharing grant from NYSERDA to purchase a Strippit Laser, which vastly increased the efficiency and productivity of Barthelmes and the value of its stock, which "would have materially affected plaintiff's decision to sell his Stock."  That claim based upon what actually took place cannot support a Section 10(b) claim since "events occurring after [plaintiff's] commitment to [purchase] stock has been made are irrelevant." Pittsburgh Coke & Chem., 421 F.Supp. at 923.

The Cost Sharing Agreement between Barthelmes and NYSERDA was signed by NYSERDA and returned to defendants on February 26, 2003. The purchase order for the Strippit Laser is dated August 14, 2003 and it was eventually delivered in December 2003.  While the Stock Sale Date was completed on August 18, 2003, the parties had previously stipulated in November 2001 that plaintiff's shares will be valued as of December 31, 2000, which was incorporated into the Order of Judge Stander dated January 11, 2002.  The NYSERDA grant and the purchase of the Strippit Laser are events that occurred after plaintiff made a commitment to sell its shares.  Pittsburgh Coke & Chem., 421 F.Supp. at 923 (Issues of non-disclosure, misrepresentations and materiality are determined by the situation and knowledge of the parties at the time they committed themselves, and not on the basis of subsequent events, even though they occur prior to "the formal closing date when the delivery and payment are

formally completed") (citing <u>Radiation Dynamics</u>, 464 F.2d at 890).

Therefore, since plaintiff was obligated to sell his shares to Barthelmes at a price determined as the valuation date of December 31, 2000, whatever he knew or did not know regarding Barthelmes' plans thereafter with respect to the NYSERDA grant or the purchase of the Strippit Laser was irrelevant and does not support a Section 10(b) claim.  <u>See</u> <u>Fershtman</u>, 450 F.2d at 1360.

B.   <u>Scienter</u>

To state a claim under Section 10(b)(5) of the Securities Exchange Act of 1934, a plaintiff must state with particularity facts giving rise to a strong inference that the defendants acted with an intent to deceive, manipulate, or defraud.  15 U.S.C. § 78u-4(b)(2); <u>Ganino v. Citizens Util. Co.</u>, 228 F.3d 154, 168 (2d Cir. 2000); <u>Press v. Chem. Inv. Serv. Corp.</u>, 166 F.3d 529 (2d Cir. 1999); <u>Harkavy v. Apparel Indus., Inc.</u>, 571 F.2d 737 (2d Cir. 1978).  The Second Circuit has held that a plaintiff may establish scienter by either "(1) identify[ing] circumstances indicating conscious or reckless behavior by the defendants, or (2) alleg[ing] facts showing a motive for committing fraud and a clear opportunity for doing so. <u>San Leandro Emergency Med. Group Profit Sharing Plan v. Phillip Morris Co.</u>, 75 F.3d 801, 810 (2d Cir. 1996).

In the instant case there are no allegations or suggestions that defendants made any misstatements or omissions of material fact prior to the time that plaintiff agreed to sell his Barthelmes

12

stock to the defendants for fair value as of the agreed upon Effective Date of Valuation.  Further, plaintiff contends that the defendants' motive to commit fraud was their desire to induce plaintiff to sell his Barthelmes stock to them knowing that the stock was to increase in value.  The event, which he claims defrauded him of value took place in August 2003 – two years after plaintiff agreed to sell his stock and agreed to an Effective Date of Valuation of his stock as of December 30, 2000.  However, "'a generalized motive . . . which could be imputed to any publicly-owned, for-profit endeavor, is not sufficiently concrete for purposes of inferring scienter.'" Kalnit v. Eichler, 264 F.3d 131, 140 (2nd Cir. 2001)(quoting Chill v. Gen. Elec. Co., 101 F.3d 263, 267 (2nd Cir. 1996).  I find plaintiff's allegations of deceptive motive to be too generalized to support the required strong inference that the defendants acted with an intent to deceive, manipulate, or defraud the plaintiff to sell his stock when he did.  Accordingly, I find that plaintiff has failed to establish the critical scienter element under Section 10(b)(5).  See Rule 9(b) F.R.C.P. (2006); see also Binghamton Masonic Temple, Inc. v. Bares, 189 F.3d 460 (2d Cir. 1999) (Court held fraud claims were frivolous because plaintiff "failed to plead scienter with specificity as required by Fed.R.Civ.P. 9(b)"); Decker v. Massey-Ferguson, Ltd., 681 F.2d 111 (2d Cir. 1982) (To establish a fraud claim under 10(b)(5), a plaintiff must allege acts constituting the fraud with

particularity under Rule 9(b)); <u>Devaney v. A.P. Chester</u>, 709
F.Supp. 1255 (S.D.N.Y. 1989).

Payment for his stock was made to plaintiff in the amount of
$1,460,000 pursuant to the terms of the executed General Release
¶(a), p.2.  The event, which plaintiff complains of as being a
deceptive act was a business transaction (the purchase of corporate
depreciable assets) two years after his redemption of his stock
resulting in a depreciation allowance to the remaining
stockholders.  These events cannot support plaintiff's claim that
the remaining shareholders defrauded him out of a larger
depreciation allowance on income he did not earn since he was no
longer a stockholder.  Moreover, the terms of the settlement, as
articulated in the release, complied with the provision that he was
to be paid his "distributable share of the profits and loses for
2003 up to the date of redemption, and to distribute his share of
any profits[.]"  <u>See</u> <u>Defendants' Answer, Ex. B, Release dated</u>
<u>August 18, 2003, p.2.</u>

   C.   <u>Causation</u>

   To state a claim under Section 10(b)(5), a plaintiff must show
that the act complained of caused the injury suffered.  <u>Bennett v.</u>
<u>U.S. Trust Co. of New York</u>, 770 F.2d 308 (2d Cir. 1985); <u>Titan</u>
<u>Group, Inc. v. Faggen</u>, 513 F.2d 234, 239 (2d Cir. 1975), <u>cert.</u>
<u>denied</u>, 423 U.S. 840 (1975); <u>Shapiro v. Merrill Lynch, Pierce,</u>
<u>Fenner & Smith, Inc.</u>, 495 F.2d 228, 238-39 (2d Cir. 1974); <u>see also</u>

14

Affiliated Ute Citizens v. United States, 406 U.S. 128, 154 (1972). The Second Circuit Court of Appeals has held that to establish causation, a plaintiff must show both loss causation, i.e., that the misrepresentations or omissions was the cause of the actual loss suffered, and transaction causation, which refers to the causal link between the defendant's misconduct and the plaintiff's decision to buy or sell securities.   Emergent Capital Inv. Management, LLC v. Stonepath Group, Inc., 343 F.3d 189, 197 (2d Cir. 2003); Citibank, N.A. v. K-H Corp., 968 F.2d 1489 (2d Cir. 1992); Mfr. Hanover Trust Co. v. Drysdale Sec. Corp., 801 F.2d 13 (2d Cir. 1986).

A distinction is made between cases involving affirmative misrepresentation and nondisclosure.   Schlick v. Penn-DixieCement Corp., 507 F.2d 374, 380 (2d Cir. 1974).   In discussing the "transaction causation" requirement of securities fraud claims, the court in Schlick stated that in "a misrepresentation case, to show transaction causation a plaintiff must demonstrate that he relied on the misrepresentation in question when he entered into the transaction which caused him harm." Schlick, 507 F.2d at 380. However, in a case of nondisclosure, the task of proving reliance may become impossible to perform.   A plaintiff must still show though that the facts at issue were material "'in the sense that a reasonable investor might have considered them important' in making his investment decisions."   Id. at 381 citing Affiliated Ute

<u>Citizens</u>, 406 U.S. at 153-54. <u>see</u> <u>Titan Group</u>, 513 F.2d at 239.

Even assuming, as plaintiff argues, that defendants had a duty to inform plaintiff of the NYSERDA grant and the purchase of the Strippit Laser in 2003, defendants' alleged nondisclosure had no effect on plaintiff's decision to sell his shares made years earlier prior to 2003. As such plaintiff could not have relied on information, which did not exist until at least two years after his decision to sell his stock. Therefore, it could not possibly have influenced his decision to sell the stock and, thus, could not be "in connection with" the sale of a security. 15 U.S.C. § 78j; 17 C.F.R. § 240.10b-5; <u>Competitive Assocs., Inc. v. Laventhol, Krekstein, Horwath & Horwath</u>, 516 F.2d 811 (2d Cir. 1975); <u>Sharp v. Coopers & Lybrand</u>, 457 F.Supp. 879 (E.D. Pa. 1978), <u>aff'd</u> 649 F.2d 175 (3d Cir.), <u>cert</u> <u>denied</u> 455 U.S. 938 (1981).

The essence of plaintiff's claim of loss is his assertion that in 2003, as a stockholder of Barthelmes, he would have been entitled, for federal income tax purposes, "to claim a pro rata share of the depreciation taken by ... Barthelmes resulting from the purchase of the Strippit Laser." <u>See</u> Complaint ¶ 37. In addition, pursuant to the Internal Revenue Code § 1377, defendants requested plaintiff to execute an Internal Revenue Service form permitting Barthelmes to elect a "short year for income tax purposes. <u>See</u> Complaint ¶ 39. Plaintiff alleges that he refused to give such consent but that nevertheless, defendants

16

intentionally and fraudulently ignored plaintiff's refusal and filed a "short year" filing for 2003. <u>See</u> Complaint ¶¶ 41-45. By intentionally violating the requirements of Internal Revenue Code § 1177, plaintiff claims that defendants defrauded plaintiff of a depreciation deduction in 2003 in excess of $100,000. <u>See</u> Plaintiff's Supplemental Memorandum.

Moreover, it is uncontested that the parties to the State court action stipulated in November 2001 that plaintiff's shares would be valued as of December 31, 2000. Justice Stander incorporated the stipulation into an Order dated January 11, 2002. For purposes of this motion for summary judgment and viewing the evidence in the light most favorable to plaintiff, I hold that January 11, 2002 was the date the parties became legally committed to the transaction. The acquisition of the Strippit Laser in 2003 would have no effect on events occurring earlier in 2000, 2001 or 2002. Any damage allegedly sustained by plaintiff occurred after the securities transaction were completed. <u>See</u> <u>Marbury Management.</u> <u>v. Kohn</u>, 629 F.2d 705, 717 (2d Cir.) (Meskill, J. dissenting) ([T]he injury averred must proceed directly from the wrong alleged and must not be attributable to some supervening cause.") <u>cert</u>. <u>denied</u>, 449 U.S. 1011 (1980). Thus, the causation requirement under 10(b)(5) has not been met and defendants' motion for summary judgment is granted.

The plaintiff by stipulation and by his confirmation of

approval of the settlement in open court, on the record, with his counsel present, and the ultimate confirmation of the settlement terms incorporated in Justice Stander's court order, received the full benefit of his bargain.

### **CONCLUSION**

For the reasons set forth above, I grant defendants' motion for summary judgment dismissing plaintiff's Complaint with prejudice.

ALL OF THE ABOVE IS SO ORDERED.


                                    s/Michael A. Telesca
                              MICHAEL A. TELESCA
                           United States District Judge

Dated:     Rochester, New York
           August 21, 2006